

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) ELIA PATRICIA LARA-WILLIAMS, as the surviving spouse of Elliott Williams, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>(1) STANLEY GLANZ, SHERIFF OF TULSA COUNTY, in His Individual and Official Capacities;<br>(2) CORRECTIONAL HEALTHCARE MANAGEMENT OF OKLAHOMA, INC.;<br>(3) DOES I through XX,<br><br>Defendants. | **FILED**<br>NOV 17 2011<br>Phil Lombardi, Clerk<br>U.S. DISTRICT COURT<br><br>11 CV - 720 JHP  TLW<br><br>JURY TRIAL DEMANDED<br><br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiff, Elia Patricia Lara-Williams ("Plaintiff"), as the surviving spouse of Elliott Williams, deceased, by and through her attorneys of record, and for her causes of action against the Defendants, alleges and states as follows:

### INTRODUCTORY STATEMENT

1. On October 27, 2011, Elliott Williams ("Mr. Williams") was found dead in his jail cell at the David L. Moss Criminal Justice Center (hereinafter "Tulsa County Jail"). He was just thirty-seven (37) years old. On information and belief, Mr. Williams's death was by suicide.

2. Mr. Williams was arrested by Owasso police on October 21, 2011. At the time of his arrest, Mr. Williams was obviously and substantially at risk of taking his own life. As documented in the police report, it was "readily apparent" that Mr. Williams was having a "mental breakdown." At one point, during his arrest, Mr. Williams stated that he was going to

1



kill himself that night and asked police to "shoot me twice." At another point, Mr. Williams said to officers, "What do I have to do to get you to shoot me?"

3. Mr. Williams was transported to the Tulsa County Jail, where he was detained until his death on October 27.

4. Jail personnel and medical staff employed by Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO") were clearly on notice of Mr. Williams's acute suicidal tendencies and serious mental health issues. However, Defendants disregarded the known and obvious risk that Mr. Williams would harm himself. Consistent with established policies, customs, patterns and/or practices, Defendants failed to provide Mr. Williams with adequate and timely medical or psychiatric care and failed to take other measures to protect him from physical harm, in deliberate indifference to Mr. Williams's serious medical needs, health and safety.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Eighth Amendment and Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

6. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

9. Plaintiff is a resident of Tulsa County, Oklahoma, and the surviving spouse of Mr. Williams. The survival causes of action in this matter are based on violations of Mr. Williams's rights under the Eighth and/or Fourteenth Amendments and Oklahoma State Law.

10. Defendant Stanley Glanz ("Sheriff Glanz" or "Defendant Glanz") is, and was at all times relevant hereto, the Sheriff of Tulsa County, Oklahoma, residing in Tulsa County, Oklahoma. Defendant Glanz, as Sheriff and the head of the Tulsa County Sheriff's Department, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the Tulsa County Jail, including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47. In addition, Defendant Glanz is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Tulsa County Sheriff's Department and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Mr. Williams's rights as set forth in this Amended Complaint. Defendant Glanz is sued in his individual and official capacities.

11. Defendant Correctional Healthcare Management of Oklahoma, Inc. ("CHMO") is a foreign corporation doing business in Tulsa County, Oklahoma. CHMO was at all times relevant hereto responsible, in part, for providing medical services and medication to Mr.

Williams while he was in the custody of the Sheriff's Department. CHMO was additionally responsible, in part, for implementing Tulsa County Jail policies regarding medical treatment, assisting in developing those policies and in training and supervising its employees.

12.     The true names and identities of Defendants DOES I through XX are presently unknown to Plaintiff. Plaintiff alleges that each of Defendants DOES I through XX was employed by the Tulsa County Sheriff's Department and/or CHMO. Plaintiff alleges that each of Defendants DOES I through XX was deliberatively indifferent to Mr. Williams's medical needs and safety, failed to provide necessary psychiatric care to him or to take other measures to prevent him from attempting suicide, violated his civil rights, negligently and wrongfully caused his death, and/or encouraged, directed, enabled and/or ordered other Defendants to engage in such conduct.

## FACTUAL ALLEGATIONS

13.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 12, as though fully set forth herein.

14.     Defendants were aware of Mr. Williams's suicidal tendencies and other serious psychological problems in advance of his untimely death on October 27, 2011.

15.     Mr. Williams was arrested in Owasso on October 21, 2011 after police responded to a disturbance at a local hotel. When police arrived at the hotel, they found Mr. Williams in the lobby with his father.

16.     Owasso Police Officer Jack Wells stated in his arrest report that "[i]t was readily apparent that [Mr. Williams] was having a mental breakdown" and that Williams "was rambling on about God, eating dirt." As the police tried to speak with Mr. Williams, he exhibited unusual behavior, including exposing his chest to lying on the ground.

17. The police report documents that Mr. Williams stated he was going to kill himself and asked police to "shoot me twice." The report further provides that at one point Mr. Williams asked, "What do I have to do to get you to shoot me?"

18. After being booked on a complaint of obstructing/interfering with an officer, Mr. Williams was transported to the Tulsa County Jail.

19. Apparently, upon arrival, Mr. Williams was taken directly to the Tulsa County Jail's medical section.

20. Mr. Williams died alone in his cell, where he was found on October 27, 2011. On information and belief, Mr. Williams's death was a suicide.

21. When he presented at the Tulsa County Jail, Mr. Williams posed an obvious, known and documented risk of suicide. Despite this knowledge, Defendants failed to provide Mr. Williams with adequate and timely medical and mental health care, protection or supervision. Defendants' deliberate indifference to the clear and present risks to Mr. Williams's safety was a direct and proximate cause of his death.

22. Defendants' deliberate indifference to Mr. Williams's serious medical needs was in furtherance of and consistent with: (a) policies which Sheriff Glanz promulgated, created, implemented or possessed responsibility for the continued operation of; (b) policies which CHMO had responsibility for implementing and which CHMO assisted in developing; and (c) established procedures, customs and/or patterns and practices.

23. First, Defendants Glanz and CHMO failed to promulgate and implement adequate mental health policies responsive to the serious medical needs of the prisoners in their care. In particular, during all times pertinent, there were absolutely no guidelines in place as to the standard of care specific to inmates' mental health needs. It is common knowledge that mental

illness is prevalent in our jails and prisons. For instance, in 2006, the United States Bureau of Justice Statistics found that the rate of reported mental health disorders in the state prison population is five times greater (56.2%) than in the general adult population (11%). It is vital that jails and prisons have policies in place establishing the standard of care for nurses and medical staff to follow in order to address this crisis. The utter lack of guidance for nurses to follow at the Tulsa County Jail as to the standard of care for inmates' mental health demonstrates a failure to train, failure to supervise and deliberate indifference toward known risks to inmate safety.

24. The absence of mental health guidelines and the failure to train and supervise has manifested itself in a pattern and practice of failures to: conduct appropriate psychiatric assessments; create and implement appropriate mental health treatment plans; promptly evaluate and transfer to an appropriate psychiatric treatment facility jail inmates who are a potential danger to themselves; and failure to take precautions to prevent suicide among high risk and mentally ill inmates. This includes a previous and preventable suicide at the Tulsa County Jail in July of 2009.

25. Second, CHMO and the Tulsa County Sheriff's Department under the direction of Sheriff Glanz have a pattern and practice of understaffing its medical treatment facility. Sheriff Glanz promotes a policy of having too few personnel on duty at the Tulsa County Jail at one time to adequately provide treatment to inmates' serious mental health needs.

26. Third, Sheriff Glanz restricts CHMO to very tight budgetary restrictions, creating substantial risks to inmate safety. According to a former CHMO Director of Administration and Director of Nursing, on at least one occasion, CHMO has been unable to provide an inmate with

necessary medical treatment because Sheriff Glanz did not provide CHMO with the required budget to purchase the needed medication.

27. Sheriff Glanz is, and has been, on notice that his policies are inadequate to meet the mental health needs of prisoners like Mr. Williams. Nonetheless, Sheriff Glanz has steadfastly and aggressively refused to reform those policies. Within the last five (5) years, a CHMO director at the Tulsa County Jail, Pamela Hoisington, was terminated for voicing her complaints about the woefully inadequate policies set forth above. Ms. Hoisington actually documented some of her complaints in writing in a judicial letter. However, rather than taking a proactive approach to improve the inadequate policies, CHMO fired Ms. Hoisington at the direction of Sheriff Glanz for allegedly exposing the Tulsa County Sheriff's Department to litigation.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Cruel and Unusual Punishment in Violation of the Eighth
and/or Fourteenth Amendments to the Constitution of the United States
(42 U.S.C. § 1983)**

**A. Allegations Applicable to all Defendants**

28. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 27, as though fully set forth herein.

29. Defendants knew there was a strong likelihood that Mr. Williams was in danger of serious personal harm and that he would try to harm himself. Mr. Williams had substantial and documented mental health issues, including acute suicidal thoughts and tendencies, made known to Defendants upon his arrival at the Tulsa County Jail and prior to his death.

30. Defendants failed to provide an adequate mental health evaluation, timely or adequate treatment and/or adequate supervision for Mr. Williams while he was placed at the Tulsa County Jail.

31. Defendants' acts and/or omissions as alleged herein, including, but not limited to, their failure to provide Mr. Williams with adequate and timely medical or psychiatric care and/or failure to take other measures to protect him from physical harm, constitute deliberate indifference to Mr. Williams's serious medical needs, health and safety.

32. As a direct and proximate result of Defendants' conduct, Mr. Williams experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

33. The aforementioned acts and/or omissions of Defendants were malicious, reckless and/or accomplished with a conscious disregard of Mr. Williams's rights, thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

**B.     Supervisor Liability (Sheriff Glanz)**

34. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33, as though fully set forth herein.

35. The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Mr. Williams's serious medical needs, health and safety and violating Mr. Williams's civil rights were the direct and proximate result of customs, practices and policies which Sheriff Glanz promulgated, created, implemented and/or possessed responsibility for.

36. Such policies, customs and/or practices include but are not limited to:

  a. Sheriff Glanz's failure to adequately train and supervise medical staff as exemplified by his failure to adopt any policies or guidelines as to the standard of care specific to inmates' mental health needs;

  b. The pattern and practice of understaffing medical personnel at the Tulsa County Jail, leaving inmates vulnerable and increasing the risk of harm;

  c. The tight budgetary restrictions which create substantial risks to inmate safety;

  d. The failure to conduct appropriate psychiatric assessments;

  e. The failure to create and implement appropriate mental health treatment plans;

  f. The failure to promptly evaluate and transfer to an appropriate psychiatric treatment facility jail inmates who are a potential danger to themselves; and

  g. The failure to take precautions to prevent suicide among high risk and mentally ill inmates.

  37. Sheriff Glanz, through his continued encouragement, ratification, and approval of the aforementioned policies, customs, and/or practices, in spite of their known and obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Mr. Williams's, serious medical needs.

  38. The aforementioned customs, policies, and/or practices were a direct and proximate cause of Plaintiff's damages and the death of Mr. Williams in that Sheriff Glanz failed to adequately train and supervise the medical staff and contractors at the Tulsa County Jail to prevent the occurrence of the constitutional violations suffered by Mr. Williams at the Tulsa County Jail. Sheriff Glanz also failed to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations suffered by Mr. Williams at the Tulsa County Jail.

39. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Williams suffered injuries and damages as alleged herein.

C. **Municipal Liability (CHMO)**

40. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39, as though fully set forth herein.

41. CHMO is a "person" for purposes of 42 U.S.C. § 1983.

42. At all times pertinent hereto, CHMO was acting under color of state law.

43. CHMO is charged with implementing and assisting in developing the policies of the Tulsa County Sheriff's Department with respect to the medical care of inmates at the Tulsa County Jail and has shared responsibility to adequately train and supervise its employees.

44. The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Williams's serious medical needs, health, and safety, and violating Mr. Williams's civil rights were the direct and proximate result of customs, policies, and/or practices of CHMO by and through its employees and/or agents.

45. Such policies, customs and/or practices include but are not limited to:

a. CHMO's failure to adequately train and supervise medical staff as exemplified by the lack of policies or guidelines as to the standard of care specific to inmates' mental health needs;

b. The failure to conduct appropriate psychiatric assessments;

c. The failure to create and implement appropriate mental health treatment plans;

d. The failure to promptly evaluate and transfer to an appropriate psychiatric treatment facility jail inmates who are a potential danger to themselves; and

e.   The failure to take precautions to prevent suicide among high risk and mentally ill inmates.

46.   CHMO tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew that such conduct was unjustified and would result in violations of constitutional rights, and was deliberate indifferent to prisoners' serious medical needs.

47.   As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Williams suffered injuries and damages as alleged herein.

## SECOND CLAIM FOR RELIEF

### Negligence
### (Defendants CHMO, Does I through XX)[1]

48.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, as though fully set forth herein.

49.   Defendants owed a duty to Mr. Williams, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate treatment.

50.   Defendants breached that duty by wholly failing to provide Plaintiff with prompt and adequate medical and psychiatric treatment and supervision despite the obvious need.

51.   Defendants' breaches of the duty of care include, *inter alia*: the failure to conduct appropriate psychiatric assessments; the failure to create and implement appropriate mental

---

[1]   Plaintiff's tort claims are properly brought against CHMO and its employees. The Oklahoma Supreme Court held in *Sullins v. American Medical Response of Oklahoma, Inc.*, 23 P.3d 259, 264 (Okla. 2001), that a private entity such as CHMO is not an "entity designated to act in behalf of the State or political subdivision [which includes a public trust]" for the purposes of the exemption under 51 Okla. Stat. § 152(2), merely because it contracts with a public trust to provide services which the public trust is authorized to provide. *See also Arnold v. Cornell Companies, Inc.*, 2008 WL 4816507 (W.D.Okla., Oct. 29, 2008). Further, Defendants Sampson, Jeffries, Ritchie, Lowen and Taylor are employees of CHMO, and are not individually "under contract with city, county, or state entities who provide medical care to inmates" for the purposes of 51 Okla. Stat. § 152(2).

11

health treatment plans; the failure to promptly evaluate and transfer Mr. Williams to an appropriate psychiatric treatment facility; and the failure to take precautions to prevent Mr. Williams from taking his own life.

52. As a direct and proximate cause of Defendants' negligence, Mr. Williams experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein.

53. As a direct and proximate cause of Defendants' negligence, Plaintiff has suffered real and actual damages, including medical expenses, mental and physical pain and suffering, emotional distress, permanent disfigurement and disability, lost wages and other damages in excess of $75,000.00.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court grant her the relief sought, including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Date: November 17, 2011

Louis W. Bullock, OBA #1305
lbullock@bullock-blakemore.com
Patricia W. Bullock, OBA #9569
pbullock@bullock-blakemore.com
Robert M. Blakemore, OBA #18656
bblakemore@bullock-blakemore.com
Bullock Bullock & Blakemore PLLC
110 West Seventh Street, Suite 707
Tulsa, OK 74119
Phone: (918) 584-2001
Fax: (918) 779-4383

Daniel Smolen, OBA #19943
danielsmolen@ssrok.com
Donald E. Smolen, II, OBA #19944
donaldsmolen@ssrok.com
Laura M. Lauth, OBA #22619
lauralauth@ssrok.com
701 South Cincinnati Avenue
Tulsa, OK 74119
Phone: (918) 585-2667
Fax: (918) 585-2669

**ATTORNEYS FOR PLAINTIFF**