IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROBBIE EMERY BURKE,            )
Special Administratrix of the  )
Estate of Elliott Earl Williams,)
                               )
    Plaintiff,             )
                               )
v.                             )  Case No. 11-CV-720-JED-PJC
                               )
STANLEY GLANZ, Sheriff of      )
Tulsa County, et al.,          )
                               )
    Defendants.            )

## OPINION AND ORDER

Before the Court is Plaintiff's Motion to Compel [Dkt. No. 189]. The motion seeks production of "investigative documents" related to the death of Elliott Earl Williams at the David L. Moss Correctional Center ("DLMCC"). Principal among these investigative documents is an investigative report regarding Williams's death. [Dkt. No. 189 at 2]. Defendant Correctional Healthcare Companies, Inc. ("CHC"), has stated in response that the report is privileged work product not subject to discovery. [Dkt. No. 196 at 3-6].[1]

---

[1] The investigative report was not listed on a privilege log because it was generated after the filing of this lawsuit. The Local Rules of this Court provide that "written communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action" need not be listed on a privilege log. LCvR 26.4(b).

1

On January 13, 2014, the Court directed counsel for CHC to submit a copy of the investigative report for *in camera* review. The Court has completed that review and conducted a hearing on January 22, 2014.

## Applicable Legal Principles

The Federal Rules of Civil Procedure permit discovery of any material that is (1) relevant, and (2) not privileged. Fed.R.Civ.P. 26(b)(1). If the Court finds that material passes the Rule 26 relevancy test, the next analytic step is to determine if the material is privileged or otherwise protected from disclosure. This is a federal question case. Plaintiff asserts claims under 42 U.S.C. § 1983. Federal law applies to issues concerning work product in federal court because such claims are predicated upon Fed.R.Civ.P. 26(b)(3).

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party . . . or its representative." Fed.R.Civ.P. 26(b)(3)(A). This requires that there be a threat of litigation *and* that the material was prepared because of that threat. *Accounting Principals, Inc. v. Manpower, Inc.*, 2009 WL 2252123, at *6-*7 (N.D.Okla. July 28, 2009). In determining whether a document is work product, the court looks to the primary motivation for its creation. *Id.*, at *7; *Kincaid v. Wells Fargo Securities, LLC*, 2012 WL 712111, at *3 (N.D.Okla. March 1, 2012); *Marten v. Yellow Transit*, 1998 WL 13244, at *10 (D.Kan. Jan. 6, 1998) (*quoting EEOC v. GMC*, 1988 WL 170448, at *2 (D.Kan. Aug. 23, 1988)). "Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work product doctrine, the inchoate

2

possibility, or even likely chance of litigation does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D.Kan. 1996) (citations omitted). The fact that litigation ultimately occurs does not, by itself, "cloak materials with the work product privilege." *Binks Mfg. Co. v. Natl. Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). The proponent of the protection must establish that the material was prepared because of the prospect of litigation. *Id.* at 1119.

The party claiming work product protection has the burden of establishing that the doctrine is applicable. *Barclayamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984). The party must show by specific facts all of the elements required for protection. If the party succeeds in establishing work product protection, the burden shifts to the other side to show a substantial need for the material and an inability to secure it by any other means. Fed.R.Civ.P. 26(b)(3).

## Discussion

Elliott Williams was taken into custody at the DLMCC on October 22, 2011. He died there five days later. On November 17, 2011, this lawsuit was filed. Thereafter, during the week of December 6-8, 2011, Dave Smith, Corporate HR Generalist with CHC, interviewed witnesses about the circumstances of Williams's death. Smith's investigative report was completed on January 9, 2012.

To be work product, material must be prepared "in anticipation of litigation." Here, the investigation was conducted and the report completed after this lawsuit was filed; thus, in this sense, the report was prepared in anticipation of litigation. The critical question then is whether the report was created primarily for litigation or for

some other purpose – what was the motivation for its creation. At the January 22 hearing, CHC asserted that the report was done to "assess the strengths and weaknesses of CHC's case" and to develop strategy for trial. Plaintiff contends that the record evidence establishes that the report was not done primarily for litigation purposes, but as an administrative review for possible improvements in the operation of the jail clinic.

At the hearing, trial counsel for CHC stated that the report was *not* requested by him or his firm, but that the report was initiated by CHC's General Counsel Shelton Frey for the purposes mentioned above. No deposition testimony or affidavit from Frey was submitted to the Court. Rather, in arguing their points, both parties rely on the deposition testimony of Don Houston, Chief Operating Officer of CHC.

CHC relies on the following testimony from Houston: In response to a question about where the investigative report was maintained by CHC, Houston said it was "[p]robably in legal," because "that's where the discussion was about conducting the investigation, was from our general counsel's office." [Dep. of Don Houston (hereafter, "Houston Dep."), at p. 45-46]. Houston was asked whether the investigator, Dave Smith, operated under the direction of the legal department. Houston stated:

> I couldn't answer that. I knew that that was where the discussion took place. It was going to direct him to go, and *I do know that he was told not to look at anything except the administrative issues*.

[Houston Dep., at p. 46, lines 12-16 (emphasis added)]. Houston was asked who instructed Smith:

> It was myself under the advice of Shelton Fry (sic).

[*Id.*, at 46, lines 19-20].

Plaintiff points to the following testimony from Houston: Houston stated that he met with county officials soon after Williams's death. Those officials told Houston that the Oklahoma State Bureau of Investigation would be investigating the matter and there could be criminal charges.

> And so – because I had talked with them about wanting to conduct our own investigation, but when I found out they were going to do an investigation, I said that I will stand down and I'll use your investigation as my investigation.

[Dkt. No. 200-1, Houston Dep., p. 15, lines 13-17].

However, when the county investigation took longer than Houston felt comfortable with, he spoke with CHC's general counsel about the company doing its own review.

> I asked whether or not he thought it was okay for us to conduct an internal review or administrative review to see if there's anything that we – any action that we need to take. And he advised me to call the county and see whether or not that would be permissible.

[*Id.*, p. 20, lines 13-18].

With that, Houston talked to county officials about CHC doing its own administrative review.

> So, I made a call to the county and asked them if I could at least conduct an administrative review to see if there was something that we needed to do administratively.

Q:   And what was the county's response?

A:   That I could proceed with that.

5

[*Id.*, p. 15, lines 19-24].

Thereafter, Smith initiated his investigation.

There is nothing specific in the report that indicates it was prepared with litigation in mind or for purposes of trial strategy – Smith is not a lawyer and there is no discussion of specific legal issues in the report.  Furthermore, other than counsel's assertion that the report would not have been prepared but for this litigation, there is no record evidence that supports that position.  Even the deposition testimony cited by CHC indicates that when Smith was given his instructions, "he was told not to look at anything except the administrative issues." [Houston Dep., p. 46, lines 15-16].  It is unlikely that a report designed to assess litigation strengths and weaknesses and to guide trial strategy would be limited in this manner.  Instead, the report seems to have been created for internal review of administrative policies and practices.

Smith's report was used for business purposes other than this litigation.  When CHC terminated Kimberly Hughes as a nurse at DLMCC, the disciplinary action form noted:

> With the completion of the investigative report related to the sentential event of October 27, 2011, it was determined that you failed to follow policy and procedure.

[Dkt. No. 189-1, Disciplinary Action Form].

Furthermore, Smith made eight specific recommendations in his report, none of which is related to trial strategy or assessment of legal strengths or weaknesses of CHC's position.  [Investigative Report, submitted for *in camera* review].  Thus,

aside from whatever value Smith's report had for CHC's legal team, it clearly was also generated for independent business purposes.

Houston's testimony establishes that he wanted the report done for purposes of "internal review" or "administrative review" of CHC's policies and procedures in connection with Williams's death:

> So I made a call to the county to and asked them if I could at least conduct an administrative review *to see if there was something that we needed to do administratively.*

[Houston Dep., p. 15, lines 19-22 (emphasis added)].

> Q   Now, this internal review was used at least in part for the purpose of deciding whether to take any disciplinary action against employees; is that correct?
>
> A   Yes, in part.

[*Id.*, at p. 20, lines 19-24].

> Q   Well, the investigation looked to see whether the policies were observed in the treatment of Elliott Williams; is that correct?
>
> A   It did not look into Mr. Williams, really, at all.  *What it was looking at was the administrative – whether or not there were any administrative things that needed to be corrected to include possible discipline, or there were any things that could be improved upon as far as the operation of their clinic.*

[*Id.*, at p. 31, line 18 – p. 32, line 4 (emphasis added)].

Viewed in the light most favorable to CHC, the investigative report was at best a dual purpose document prepared for regular business purposes – an analysis of employees' compliance with CHC's policies, an evaluation of ways that the clinic's operation could be improved, and an assessment of whether any employee discipline was warranted – and, perhaps, for litigation assessment.  The Court is convinced that

the investigative report would have been created even if this lawsuit had not been filed. Most of the purposes of the report, as described by Houston, are directed at internal administrative review. Indeed, Smith was told that was all he was to look at.

Under the circumstances presented here, the Court concludes that the investigative report prepared by Dave Smith was not created primarily because of the pending litigation, and is, therefore, not work product. The report was not ordered or supervised by the trial counsel representing CHC; nor was the report initiated or overseen by the general counsel or legal department at CHC. The report was initiated by Chief Operating Officer Houston for administrative purposes and it was conducted by a non-lawyer who reported to the vice-president of Human Relations. [Houston Dep., p. 17, lines 2-3]. Furthermore, CHC's primary motivation for preparing the report was not litigation or trial strategy. The primary motivation was internal administrative review to see if CHC could improve performance at the DLMCC clinic.

Accordingly, the Court finds that the investigative report is relevant and non-privileged under Rule 26(b)(3) and should be produced to the Plaintiff's counsel. The report shall be produced within 10 days hereof, unless an appeal/objection is made to the District Judge.

IT IS SO ORDERED this 23rd day of January 2014.

_____
Paul J. Cleary
United States Magistrate Judge