NO. 11-CV-720-JED-PJC

---

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

---

ROBBIE EMERY BURKE,
as the Special Administratrix of Elliott Earl
Williams, Deceased,
Plaintiff,

v.

STANLEY GLANZ, et. al. ,

Defendants.

---

# DEFENDANTS' MOTION TO ALTER/AMEND JUDGMENT

---

Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
Mbilike M. Mwafulirwa, OBA #31164
BREWSTER &DE ANGELIS, PLLC
2617 E. 21st Street
Tulsa, OK 74114
Tel: (918) 742-2021
Fax: (918) 742-2197

**Attorneys for Defendant Stanley Glanz, in his individual capacity and Vic Regalado, in his official Capacity.**

**DEFENDANTS' MOTION TO ALTER/AMEND JUDGMENT**

Defendants Glanz and Regalado hereby file this motion pursuant to Fed. R. Civ. P. 59(e) to alter/or amend the judgment (Dkt. 499). Defendants ask this Court to alter/amend the judgment to apply a set-off from monies previously collected in settlement with the Defendants Correctional Healthcare Defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower in this case. Defendants Glanz and Regalado have also filed a Motion to Disclose the settlement amount previously collected by Plaintiffs from the Correctional Healthcare Defendants. Dkt. No. 505.

I. INTRODUCTION

On November 17, 2011, Elia Patricia Lara-Williams ("Ms. Williams") brought suit against Stanley Glanz, in his individual capacity for supervisory liability, and in his official capacity, Correctional Healthcare Management and Does I through XX. Dkt. No. 2. On March 16, 2012, Ms. Williams amended her complaint adding several defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower (all employees of Correctional Healthcare) and several Owasso Police Officers. Dkt. No. 4. On September 10, 2014, the Court granted Plaintiff's Motion to Dismiss with prejudice the Correctional Healthcare Defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower from the lawsuit as a settlement had been reached by the parties. Dkt. Nos. 233; 241; 247 and 299.

Plaintiff received satisfaction from her settlement with CHC for the same injury, on the same facts. *See* Dkt. Nos. 233; 241; 247 and 299. And Plaintiff also pursued her claims against Glanz and Regalado for the same injuries and facts and secured a $10.25 million verdict. *See* Jury Verdict, Dkt. 498. Tenth Circuit precedent compels that there be only one satisfaction for the same injuries allegedly caused by co-defendants sued jointly and severally on the same set of

1

facts. *Eberle v. Sinclair Prairie Oil Co.*, 120 F.2d 746, 748-749 (10th Cir. 1941) ("A person injured *by a joint tort* has a single and *indivisible cause of action*. He may proceed against the wrongdoers either jointly or severally and may recover a judgment or judgments against all, *but he can have but one satisfaction of his single cause of action*.") (emphasis added).

## II. PERTINENT BACKGROUND FACTS

### A. Indivisible Injuries And Damages Asserted In Plaintiff's Pleadings

On April 30, 2012, Plaintiff filed her Second Amended Complaint ("Complaint," Dkt. 15) against Defendants Glanz and several other people, including CHC employees. In her Complaint, referring generically to "all Defendants," Plaintiff claimed that Mr. Williams' constitutional rights had been violated and that he had "experienced physical pain, severe emotional distress, mental anguish, loss of his life, and the damages alleged herein." Second Amend. Compl. ¶70, Dkt. 15. Plaintiff incorporated these allegations in the subsequent portion of the Complaint. *Id.* ¶80. Further along in the Complaint, describing the municipal liability claims, Plaintiff once more repeated that "Mr. Williams and Mr. Williams' heirs suffered *injuries and damages as alleged herein*." *Id.* ¶90 (emphasis added); *see also* ¶96, Dkt. 15 (same).

Defendant Glanz, in turn, filed an Answer to Plaintiff's Second Amended Complaint (Dkt. 15) on April 30, 2012. *See* Dkt. 22. Defendant Glanz raised the following affirmative defense in the Answer: "The injuries and damages alleged by the Plaintiff *are the result of the actions by others and Glanz is not responsible for those actions by other people*." *Id.* at p.8 (emphasis added). Plaintiff did not—at any time throughout this litigation—move to strike this affirmative defense. Indeed, even in the in the Pretrial Order, Plaintiff categorized her damages as "pain, severe emotional distress, mental anguish, *loss of life*…and any other damages sought by Plaintiff." Dkt. 378, p. 8, ¶ 27; p. 17, ¶ 43 (emphasis added).

### B. Plaintiff's Global Settlement with CHC Defendants And This Court's Finding That Set-Off Was Not Waived

Plaintiff settled her entire claims against the CHC defendants. Plaintiff's settlement with CHC unquestionably concerned the very same damages that were sought against the remaining Defendants at trial. As relevant here, Plaintiff filed a Motion to Voluntarily Dismiss CHC Defendant employees Chappelle, Hightower and Luca with Prejudice. *See* Dkt. 247. This Court granted the motion; however, in the Order, this Court noted that:

> The parties do not discuss this somewhat complicated issue of whether state law regarding offset can be applied in a case such as this, which arises from federal civil rights law. *See Goad v. Macon Cnty.*, Tenn., 730 F. Supp. 1425, 1430 (M.D. Tenn. 1989) (discussing extensively offset in civil rights cases and the process by which state law may, if appropriate, be applied in a case such as this). *The Court need not cross this bridge at this time, but notes that the nonsettling defendants will not be deemed to have waived presentation of the issue of the settling defendants' liability to the jury simply as a result of the settling defendants' dismissal.*

Dkt. 299, p. 3, fn. 1 (emphasis added). Additionally, the Court noted, in the same order, that Defendant Glanz (at the time sued individually and in his official capacity) had not waived the set-off affirmative defense. Order, Dkt. 299, p. 3, fn. 2 ("[I]t *does not appear from Glanz's Answer that any such defense has been waived*. (*See id.* at 8 (listing as an affirmative defense that the "injuries and damages alleged by the Plaintiff are the result of the actions by others and Glanz is not responsible for those actions by other people'")) (emphasis added).

### C. Presentation of Indivisible Injuries And Damages At Trial

Plaintiff presented this case as one where Mr. Elliott Williams suffered pain and suffering and his eventual death,[1] as the result of the medical care afforded to him by Tulsa County and its

---

[1] A review of the trial record reveals that Plaintiff offered no evidence based upon a reasonable degree of medical certainty that any action or inaction by the Defendants caused Elliott Williams' death. The medical examiner did opine that Mr. Williams' death was caused by complications from spinal paralysis. *See* Ex. A, Dr. Lanter at 20:1-24. But no expert opined that

3

medical provider CHC. *See* Pretrial Order, Dkt. 378, p. 8, ¶ 27; p. 17, ¶ 43 (Plaintiff sought relief for Mr. Williams' "pain, severe emotional distress, mental anguish, *loss of life*…and any other damages . . . .") (emphasis added). Even the Court's narrow compensatory damages jury instruction failed to distinguish between Plaintiff's survival and wrongful death damage claims. *See* Dkt. 495, Inst. No. 28. As relevant, the compensatory damages instruction was as follows:

> Plaintiff is entitled to recover from one or more of the Defendants, you must award damages which you think will justly and fairly compensate for *any injury* you believe that Elliott Williams actually *sustained* as a direct consequence of the Defendant's conduct. Such damages are called compensatory damages. You shall award compensatory damages *only for those injuries which you find that the Plaintiff has proven beyond a preponderance of the evidence.* Moreover, you shall award compensatory damages only *for those injuries* which you find the Plaintiff has proved were the direct result of conduct by a Defendant in violation of Mr. William's Constitutional rights.
> A plaintiff who prevails is entitled to compensatory damages for *physical injury*, bodily pain and suffering, and mental pain and anguish. Thus, compensatory damages may include damages for Elliott William's *physical injury*, mental pain and anguish, and bodily pain and suffering. Placing a dollar value on pain, suffering, and anguish is a difficult task. You must use your best judgment.
> Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial.

Dkt. 495, Inst. No. 28 (emphasis added). In this circuit, death is considered an injury. *Fox v. Ford Motor Co.*, 575 F.2d 774, 787 (10th Cir. 1978) ("But death is a different matter. *It is* not *a divisible injury* . . . .") (emphasis added). Furthermore, the Court gave a jury instruction that the jury could impose liability on Defendants not solely based on their own conduct or that of their employees, but also (erroneously) for the conduct of their "agents." *See* Dkt. 495, Inst. Nos. 19 & 21. The Court declined to provide a jury instruction on the meaning of "agent," in the specific context of this case. It cannot be said with certainty that the jury did not consider CHC

---

the paralysis was caused by the Defendants. *See* Ex. B, Dr. Allen at 103:6-14; 106:25; 107:17; 107:20-23; See Ex. C, Dr. Khan at 55:2-12; 55:13-17; Ex. D, Dr. Hoge, at 74:20-25; 74:5-9; 78:20-22.

Defendants' agents; and as a corollary, it can't be said with certainty that the jury did not attribute CHC and its staff's tortious conduct on Defendants. *See, e.g., Crest Res. Inc. v. Dan Blocker Petr. Cons., Inc.*, 865 F.Supp.2d 1113, 1120 (N.D. Okla. 2012) ("A principal is liable for the acts of its agent only when the agent has actual or apparent authority to perform those acts . . . ."). Finally, the jury verdict and final judgment also failed to distinguish between Plaintiff's survivorship and wrongful death damage claims. *See* Dkt. 498 (Jury Verdict) & Dkt. 499 (Final Judgment). Accordingly, it should be assumed that the compensatory verdict in this case includes both the survivorship and wrongful death damages, without qualification. Dkts. 498-499.

### III.   LEGAL ARGUMENT

#### A.   This Court Should Amend The Judgment and Apply a Setoff

##### 1.   Standard of review

A motion under Fed. Rule Civ. P. 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict. *Western Ind., Inc. v. Newcor Canada, Ltd*, 709 F.2d 16, 17 (7th Cir. 1983) ("a request to alter the judgment . . . [is] therefore a proper request to make in Rule 59(e) motion" seeking a "set-off"); *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 385 n. 2 (4th Cir. 2010) ("district court properly considered CSXT's Rule 59(e) motion under the third category, as CSXT contends the *denial of a setoff* would be both legally erroneous and manifestly unjust.") (emphasis added);[2] *see also Big Elk v. Bd. of Cnty. Com'rs of Osage Cnty.*, 3 Fed. App'x 802, 808-809 (10th Cir. 2001) (unpublished).[3] The proper method for calculating the

---

[2] *Piercy v. Whiteside County, Illinois*, 2016 WL 1719802, at *5 (N.D.Ill., 2016) ("A motion under Rule 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict.") (citations omitted).

[3] In this circuit, any motion filed within 28 days of the final judgment, "regardless of how it is styled or construed" that "*questions the correctness of the judgment* is properly treated as a Rule 59(e) motion." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (emphasis added).

5

amount of damages presents a question of law for this Court, which the Tenth Circuit reviews *de novo*. *Big Elk*, 3 Fed. App'x at 808 (citing *Southern Colo. MRI, Ltd. v. Med-Alliance, Inc.*, 166 F.3d 1094, 1100 (10th Cir. 1999)). The actual amount of damages assessed is reviewed on appeal for clear error. *Id.* "An error is clear 'if the district court's findings lack factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred.'" *GEEG (Shanghai) Solar Science & Tech. Co. v. Lumos LLC*, 829 F.3d 1201, 1205-1206 (10th Cir. 2016) (citations omitted).

### 2. Defendants' preserved their setoff arguments

Defendants' Answer included the following affirmative defense: "The injuries and damages alleged by the Plaintiff *are the result of the actions by others and Glanz is not responsible for those actions by other people*." Dkt. 22 at p.8 (emphasis added). This Court has already recognized that by asserting this defense in their Answer, Defendants preserved their "right to assert liability of the settling defendants." *See* Dkt. 299, p. 3, fn. 2. Defendants further preserved the issue by raising it in the Pretrial Order. Doc. No. 378, p. 13, ¶ 29. Because the issue of setoff appears in the Pretrial Order in this matter, and the Pretrial Order supersedes the pleadings, Defendants have preserved the issue. Defendants clearly have not waived the issue of setoff in either their Answer (*see* Dkt. 299) or the Pretrial Order. *See Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) (a pretrial order supersedes the pleadings and controls the subsequent course of litigation).

The Court specifically found that Defendants did *not* waive their defense of setoff or apportionment concerning the liability of the CHC defendants at the time Plaintiff settled her claims against the CHC defendants.

### 3. A setoff is appropriate in this case

Plaintiff's claims against co-defendants CHC stem from the same allegations, and indivisible injuries, as her claims against Defendants Glanz and Regalado, based on the same facts. Plaintiff alleged, essentially, that Mr. Williams suffered pain, suffering and eventual death as a result of his treatment in the Tulsa County jail. Death, as a matter of law, is in an indivisible injury. *Fox*, 575 F.2d at 787 ("But death is a different matter. It is not a divisible injury . . . ."). An indivisible injury gives rise to a right of set-off in §1983 litigation. *See Wren v. Spurlock*, 798 F.2d 1313, 1323-1324 (10th Cir. 1986), *cert. denied*, 479 U.S. 1085 (1987) (no right of setoff for divisible injuries). That is because there can be only one recovery for the same injury—death. *Guinn v. Great West Cas. Co.*, No. CIV-09-1198-D, 2010 WL 4363784, at*4 (W.D. Okla. Oct. 27, 2010) ("[t]here can be *only one wrongful-death claim and one recovery*") (emphasis added); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 487 (6th Cir.1973) ( "[A]n injured party is entitled to receive full satisfaction for his injury only once."). The Tenth Circuit in *Eberle v. Sinclair Prairie Oil Co.*, 120 F.2d 746 (10th Cir. 1941) instructed that, "A person injured *by a joint tort* has a single and *indivisible cause of action*. He may proceed against the wrongdoers either jointly or severally and may recover a judgment or judgments against all, *but he can have but one satisfaction of his single cause of action.*" *Id*. at 748-749 (emphasis added).

As applied here, Plaintiff should not be allowed to receive a windfall. In this case, Plaintiff pursued claims against Glanz, Regalado and CHC for the same pain and suffering and eventual death to Mr. Williams, based on the same set of facts. Undoubtedly, Plaintiff received satisfaction from her settlement with CHC for the same injuries, based on the same facts. *See generally* Dkt. 247. And Plaintiff also pursued her claims against Glanz and Regalado for the same injuries and facts and secured a $10.25 million verdict. *See* Jury Verdict, Dkt. 498. Tenth

7

Circuit precedent compels that there be only one satisfaction for the same injuries, based on the same facts. *See Eberle*, 120 F.2d at 748-749. In fact, in a case like this one, where one joint tortfeasor settles before trial, the non-settling defendants are entitled to a setoff credit. *See In re Jones*, 804 F.2d 1133, 1140 (10th Cir. 1986) (applying Oklahoma law and making clear that a set-off credit should be applied when, (1) there was a prior settlement, (2) the defendants in the case are jointly and severally liable, and (3) the defendants must have been liable for the same injury). Undoubtedly, all three requirements are satisfied in this case. CHC settled before trial. *See* Dkt. 247. The Complaint asserted unqualified constitutional claims against "all Defendants" for Mr. Williams' pain, suffering and eventual death, based on the same set of facts. *See* Second Amend. Compl. ¶¶24-100, Dkt. 15; *see also* Pretrial Order, Dkt. 378, p. 8, ¶ 27; p. 17, ¶ 43. In addition, as previously noted, death is an indivisible injury. *Fox*, 575 F.2d at 787 ("But death is a different matter. It is not a divisible injury . . . ."); Restatement (Second) Torts §433A cmt. i (1979) ("Certain kinds of harm, by their very nature, are normally incapable of any logical, reasonable, or practical division. *Death is that kind of harm, since it is impossible, except upon a purely arbitrary basis for the purpose of accomplishing the result, to say that one man has caused half of it and another the rest.*") (emphasis added). Altogether, that satisfies prong number three—same injury—in *In re Jones,* 804 F.2d at 1140. Against that background of an indivisible injury, it follows that "[m]ultiple tortfeasors who [like here] *concurrently* cause an *indivisible injury* are jointly and severally liable; each can be held liable for the entire injury." *Northington v. Marin*, 102 F.3d 1564, 1569 (10th Cir. 1996) (emphasis added). Accordingly, a setoff is warranted. *In re Jones,* 804 F.2d at 1140; *see also Wren*, 798 F.2d at 1323-1324 (right of setoff for indivisible injuries in §1983 claims); *Big Elk.*, 3 Fed. App'x at 809 (applying set-off to §1983 claims).

8

### B.  Setoff Principles Are Applicable To 42 U.S.C. §1983 Civil Rights Actions

This Court previously cited *Goad v. Macon County, Tenn.*, 730 F.Supp. 1425 (M.D. Tenn. 1989) as a case that "extensively discussed" offset in civil rights cases and the process by which state law may, if appropriate, be applied in a case such as this. *See* Dkt. 299, fn. 1. The court in *Goad*, drawing from 42 U.S.C. § 1988, provided a cogent four-step analysis on the issue of set-off in a civil rights case: (1) Determine whether there is a basis for joint liability; (2) Determine "whether federal law addresses the question of settlement set-offs"; (3) Determine "state law's position on the issue"; and (4) Examine the state laws "consistency with federal law and especially with the policies and purposes of 42 U.S.C. § 1983 and 1988." *Goad*, 730 F.Supp. at 1426. In explaining the last step in the appropriate analysis, *Goad* stated:

> If there is no inconsistency between these two bodies of law, the state law solution to the problem will be applied. If there is an inconsistency, the state law must be rejected, and this court must fashion an appropriate remedy to carry out the congressional purposes behind the civil rights legislation.

*Id.*

The first step in the *Goad* analysis is easily met in this matter. As previously noted, there is clearly a basis for joint liability as Plaintiff's claims against Defendants and former defendants CHC (and its agents) arise from the same set of facts: the alleged wrongful death of Elliott Williams and the related medical care to Mr. Williams at the Tulsa County jail. *See Fox*, 575 F.2d at 787 ("But death is a different matter. It is not a divisible injury . . . ."); In fact, in her Bench Brief, Plaintiff does not challenge the issue of joint liability. *See* Dkt. 408. Likewise, Plaintiff does not raise any challenge to joint liability in the Pretrial Order. *See* Dkt. 378. Thus, Defendants have met the "prerequisite" of joint liability. *See Northington*, 102 F.3d at 1569

9

("[m]ultiple tortfeasors who [like here] *concurrently* cause an *indivisible injury* are jointly and severally liable; each can be held liable for the entire injury.")

The second requirement in *Goad* ─ "whether federal law addresses the set-off question" ─ is also not at issue. On the one hand, *Goad*, citing *Miller v. Apartments and Homes of N.J., Inc.*, 646 F.2d 101 (3d Cir. 1981), found that there is a federal common law of contribution in civil rights cases. *Goad*, 730 F.Supp. at 1427. However, the court also noted *Dobson v. Camden,* 705 F.2d 759, 763 (5th Cir. 1983), which rejected the Third Circuit's reasoning in *Miller*. Ultimately, after analyzing relevant case law, *Goad* held that federal law was deficient on the issue of setoff. Empowered by 42 U.S.C. §1988, the court turned to state law for a solution. In fact, the Tenth Circuit has held that whether federal or state law is applied, the inescapable outcome is the same ─ setoffs of prior settlements are permitted in §1983 cases. *Big Elk.*, 3 Fed. App'x at 808-809.

Finally, the court in *Goad* turned next its analysis to Tennessee state law, T.N. STAT.ANN. §29-11-105, that is on all fours with Oklahoma's setoff statute OKLA. STAT. ANN. 12 §832(H). As relevant here, the Tennessee setoff statute provides:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death…It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater . . . .

T.N. STAT.ANN. §29-11-105. In identical fashion, Oklahoma's setoff statute also provides:

> When a release, covenant not to sue, or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death…It does not discharge any other tort-feasor from liability for the injury or wrongful death unless the other tort-feasor is specifically named; but it reduces the claim against others to the extent of any amount stipulated by the

10

> release or the covenant, or in the amount of the consideration paid for it, whichever is greater . . . .

OKLA. STAT. ANN. 12 §832(H). Construing Tennessee law that is identical to Oklahoma law, *Goad* concluded that the statute requires the reduction of a jury award when, like here, a jointly liable co-defendant enters into a settlement agreement before trial against the remaining co-defendant. *Goad*, 730 F.Supp. at 1431. As the court explained, the "underlying [compensatory] purpose of the civil rights legislation is in no way compromised by applying settlement monies as a credit or set-off to a subsequent jury award of compensatory damages against the nonsettling defendants." *Id.* In fact, a refusal to afford the non-settling defendants a setoff merely serves to taint "the theoretical purity of this purpose." *Id.* Indeed, it merely betrays fairness and the compensatory principle to afford Plaintiff a windfall for the same injuries. *Id.*; *see also, e.g.*, *Eberle*, 120 F.2d at 748-749 ("A person injured *by a joint tort* has a single and *indivisible cause of action*. He may proceed against the wrongdoers either jointly or severally and may recover a judgment or judgments against all, *but he can have but one satisfaction of his single cause of action*.") (emphasis added); *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1208 (10th Cir. 1988) ("The 'one satisfaction rule' is applicable", when like here, "defendant's conduct resulted in a single injury.").

Allowing a setoff does not frustrate the deterrence effects of §1983. Section 1983 was enacted "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Even then, the United States Supreme Court has explained that "the tort liability created by § 1983 *cannot be understood in a historical vacuum* . . . One important assumption underlying the court's decisions in this area is that members of the 42d Congress *were familiar with common-law principles, including defenses previously recognized*

11

*in ordinary tort litigation*, and that they likely *intended these common-law principles to obtain, absent specific provisions to the contrary.*'" *Briscoe v. LaHue,* 460 U.S. 325, 330 (1983); *Rehberg v. Paulk*, 566 U.S. 356, 362-363 (2012) ("Congress intended [§1983] to be construed in the light of common-law principles" and as such, it "has looked to the common law for guidance" in determining the full scope §1983 relief and defenses.) (alteration in original). Among those established common law principles that the Tenth Circuit recognizes is one that, "[a] person injured *by a joint tort* has a single and *indivisible cause of action*. He may proceed against the wrongdoers either jointly or severally and may recover a judgment or judgments against all, *but he can have but one satisfaction of his single cause of action*." *Eberle*, 120 F.2d at 748-749 (emphasis added); *Hess Oil*, 861 F.2d at 1208 ("When a plaintiff receives an amount from a settling party, *it is generally credited against the amount recovered by the plaintiff from a non-settling defendant*, provided both the settlement and the judgment represent *common damages*.") (emphasis added).

Contrary to *Glover'*s bold claims─that payment of actual damages is the only way to effectuate the deterrence principle in civil rights litigation─the United States Supreme Court holds that a mere threat of damages has also the requisite deterrent effect. *See Carlson v. Green*, 446 U.S. 14, 21 (1980) ("It is almost axiomatic that the *threat of damages has a deterrent effect*, surely particularly so when the individual official faces personal financial liability.") (emphasis added) (footnote omitted)). Indeed, the Supreme Court held that the threat of damages on government employees individually also has a deterrent effect on their governmental supervisors because they are more likely to impose discipline on their subordinates and implement corrective procedures. *Id.* at 21 ("That argument [denying deterrent effect on supervisors when only employee faces threat of damages] suggests, however, that the superiors would not take the same

actions [disciplining and corrective policies] when an employee is found personally liable for violation of a citizen's constitutional rights. *The more reasonable assumption is that responsible superiors are motivated not only by concern for the public fisc but also by concern for the Government's integrity*.") (emphasis added); *see also Goad*, 730 F.Supp. at 1431. Setoffs do not weaken deterrence because,

> the same "quantity" of monetary threat still looms over the potential actor's head as he contemplates conduct regardless of whether the law allows for settlement set-offs or not. As a potential actor contemplates acting in conjunction with other persons, he has absolutely no assurance or indication that any of his cohorts would settle with the plaintiff if a lawsuit resulted from the conduct. Thus, he also has no assurance or indication that his own liability would be reduced because of a settlement set-off. Consequently, the possibility of compensating for the entire injury still exists as a deterrent to the contemplated act.

*Id*. In fact, until a setoff is granted on a jury verdict, "the potential of [paying the] . . . entire liability adequately serves the goal of deterrence even if settlement setoffs are applied against compensatory damage awards." *Goad*, 730 F.Supp. at 1431. And in any case, when punitive damages are awarded, like here, they maintain and preserve the deterrence effect of §1983. *Id.* Accordingly, the court in Goad applied a setoff. *Id.*

### C. The Tenth Circuit Has Held That Setoffs Are Appropriate In Civil Rights Cases

As previously noted, the Tenth Circuit has already considered whether, in a 42 U.S.C. § 1983 civil rights case, setoff can be applied. In *Big Elk*, 3 Fed. App'x. 802, the Tenth Circuit reviewed an Order by Judge Thomas Brett, of this District Court, reducing an actual damage award against non-settling defendants by the amount paid to plaintiff by settling defendants. The Tenth Circuit found that a setoff was warranted regardless of whether federal or Oklahoma law applied. *Id.* at 808-809. *Big Elk* remains good law as the Tenth Circuit has not reversed its holding that a setoff is appropriate in a civil rights action.

13

> **D. Thus Far, Plaintiff Has Failed To Cite Any Precedent Or Persuasive Authority That Supersedes The Tenth Circuit's Ruling In *Big Elk***

We expect that Plaintiff, like she did before in her bench brief (Dkt. 408), will cite *Glover v. Johnson*, 14-CV-936, 2016 WL 5854282 (W.D. Okla. Oct. 6, 2016) for the proposition that "under similar circumstances" as this case, a setoff is inapplicable. *Glover* is not binding on this Court, and most assuredly, when it is weighed against highly persuasive on-point circuit precedent, its claim to glory should yield. Additionally, *Glover* is distinguishable. *Glover* involved allegations of wrongful arrest and sexual assault by a sheriff's deputy at a City/County jointly run jail. *Glover* did not involve an alleged wrongful death. Further, the plaintiff in *Glover* maintained that her damages from the remaining defendant were separate and distinct from the damages compensated by the settling defendants. Specifically, the plaintiff, in *Glover*, argued:

> injuries inflicted by [the settling defendants] on [Plaintiff] *are completely separate and distinct from the remaining Defendant in this lawsuit. . .Because of the different injuries and constitutional violations involving the parties subject to the previous settlement, there is no right of setoff or apportionment in this case.* [The remaining defendant Sheriff] and the settling Defendants are not joint tortfeasors.

*Glover v. Johnson*, Plaintiff's Trial Brief, Dkt. 408 (emphasis added).

As applied here, the injury in this case is inherently subject to a setoff. The claimed injury to Plaintiff stems from a wrongful death. The injury in this case, as opposed to that in *Glover*, is undoubtedly indivisible. *Fox*, 575 F.2d at 787 ("But death is a different matter. It is not a divisible injury . . . ."); *Guinn*, 2010 WL 4363784, at*4 ("[t]here can be *only one wrongful-death claim and one recovery*") (emphasis added). For indivisible injuries like these, there is a right to a setoff. *See In re Jones,* 804 F.2d at 1140; *Wren*, 798 F.2d at 1323-1324 (right of setoff for indivisible injuries in §1983 claims); *Big Elk.*, 3 Fed. App'x at 809 (applying set-off to §1983 claims); *Goad*, 730 F.Supp. at 1431.

14

### E.   Several Other Federal Courts Are Consistent With *Big Elk* in Allowing Setoffs

The weight of authority from courts around the country supports setoffs in civil rights cases. *See Morris v. Bland,* 2014 WL 12637911, at *12 (D.S.C. Dec. 31, 2014)(applying state law to offset compensatory damage award in wrongful death § 1983 case); *C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014) (suggesting offset is appropriate in a § 1983 civil rights case, but finding that Defendants failed to preserve their right to offset ); *Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir. 1993) (holding that when there are multiple tortfeasors in a civil rights case and there is an indivisible injury, joint and several liability exists); *Piercy*, 2016 WL 1719802, at *5  (holding that non-settling defendants were entitled to seek a setoff on the § 1983 claims post-judgment);*; Fox ex rel. Fox v. Barnes,* 2013 WL 2111816, at *9 (N.D.Ill. 2013)(holding setoff is proper in a § 1983 case)*; Kohn v. School Dist. of City of Harrisburg*, 2012 WL 3560822, at *6 (M.D.Pa. 2012)(allowing setoff in a § 1983 civil rights case serves both goals of deterrence and compensation); *Ruhlmann v. Smith*, 323 F.Supp.2d 356, 369 (N.D.N.Y. 2004)(holding that setoff in favor of non-settling defendants was compelled by equity); *Hoffman v. McNamara*, 688 F.Supp. 830, 834 (D. Conn. 1988) ("Allowing double recovery would conflict with § 1983's basic purpose--to provide compensation, not a windfall.").

Accordingly, this Court should follow suit and apply a setoff to this case based on Plaintiff's prior settlement with CHC for the same injuries and damages.

### IV.   CONCLUSION

Defendants have not waived the issue of setoff as it is included in the Pretrial Order. Tenth Circuit precedent, *Big Elk*, 3 Fed. App'x. 802, authorizes setoff under the circumstances presented in this matter. Plaintiff has already received compensation for an indivisible injury from the settling defendants and should not be able to seek double recovery in this matter.

Respectfully Submitted,

*/s/ Guy A. Fortney*
Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
Mbilike M. Mwafulirwa, OBA #31164
Brewster & De Angelis, P.L.L.C.
2617 E. 21 Street - Tulsa, OK  74114
(918) 742-2021
***Attorneys for Defendants Stanley Glanz, and Vic Regalado***

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2017, I electronically transmitted the foregoing document using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

*/s/ Guy A. Fortney*_____
Guy A. Fortney