NO. 11-CV-720-JED-PJC

---

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

---

**ROBBIE EMERY BURKE,**
**as the Special Administratrix of Elliott Earl**
**Williams, Deceased,**
**Plaintiff,**

**v.**

**STANLEY GLANZ, et. al. ,**

**Defendants.**

---

### DEFENDANTS STANLEY GLANZ AND VIC REGALADO'S
### RESPONSE IN OBJECTION TO PLAINTIFF'S MOTION FOR ATTORNEY'S
### FEES AND EXPENSES (Dkt. 543)

---

Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
Katie S. Arnold, OBA #32345
BREWSTER &DE ANGELIS, PLLC
2617 E. 21st Street
Tulsa, OK 74114
Tel: (918) 742-2021
Fax: (918) 742-2197

**Attorneys for Defendants Stanley Glanz**
**and Vic Regalado**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.   PROCEDURAL SUMMARY ........................................................................................... 1

II. ARGUMENTS AND AUTHORITIES ............................................................................ 5

    A.  The requested hourly rate is unreasonable ............................................................ 6

    B.  The requested number of hours is unreasonable .................................................... 8

        1.  Time billed relating to prosecuting Plaintiff's case against other Defendants  11

        2.  Don and Dan Smolen duplicative and identical billing ................................... 12

        3.  Tom Mortenson's application should be denied in its entirety as duplicative, block billing and vague ................................................................................... 13

        4.  Bullock's billing during trial should be excluded as not necessary to the litigation ........................................................................................................... 14

            a.   Denney's billing consists of duplicative block billing ............................ 14

            b.  Guardianship, contracting with Plaintiff, and fee agreements between Plaintiff's counsel ................................................................................... 15

            c. The fee application contains extensive duplication and the total number of hours for certain tasks is excessive............................................................ 15

                1)  Original and First Amended Complaint ............................................. 15

                2)  Mediation ........................................................................................... 16

                3) Joint Status Report ............................................................................. 17

            d.  The fee application contains inadequate description details, which deprives the Court an opportunity for meaningful review of the reasonableness of the activity .............................................................................................. 18

III. EXPERT TESTIMONY ................................................................................................. 18

IV. CONCLUSION ............................................................................................................... 18

## Cases

*Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.,*
  451 F.3d 1097 (10th Cir. 2006) ..................................................................... 5, 6

*Blum v. Stenson,*
  465 U.S. 886 (1984) ............................................................................................ 7

*Case v. Unified School District No. 233,*
  157 F.3d 1243 (10th Cir. 1998) ........................................................................... 6

*Copeland v. Marshall,*
  641 F.2d 880 (1980) ....................................................................................... 9, 10

*Cunico v. Pueblo School Dist. No. 60,*
  705 F. Supp. 1466 (D. Colo. 1988) ............................................................ 8, 12, 13

*Dill v. City of Edmond,*
  72 F. App'x 753 (10th Cir. 2003) ........................................................................ 6

*Ellis v. University of Kansas Medical Center,*
  163 F.3d 1186 (10th Cir. 1998) ........................................................................... 9

*Hensley v. Eckerhart,*
  461 U.S. 424, 103 S. Ct 1933 .............................................................................. 6

*In re Cascade Oil Co.,*
  126 B.R. 99 ................................................................................................ 8, 9, 10

*Mares v. Credit Bureau of Raton,*
  801 F.2d 1197 (10th Cir. 1986) ........................................................................... 6

*Oklahoma Natural Gas Co. v. Apache Corp.,*
  355 F.Supp.2d 1246 (2004) ............................................................. 14, 15, 16, 18

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air,*
  478 U.S. 546, 106 S. Ct. 3088 (1986) ................................................................. 6

*Perdue v. Kenny A.,*
  130 S. Ct. 1662 (2010) ........................................................................................ 5

*Phelps v. Hamilton,*
  120 F.3d 1126 (10th Cir. 1997)................................................................................. 6

*Ramos v. Lamm,*
  713 F.2d 546 (10th Cir. 1983).........................................................................Passim

*Robinson v. City of Edmond,*
  160 F.3d 1275 (10th Cir. 1998).......................................................................Passim

*Sussman v. Patterson,*
  108 F.3d 1206 (10th Cir. 1997)................................................................................. 9

## **Rules**

Fed. R. Civ. P. 50(b) ................................................................................................ 5
Fed. R. Civ. P. 59(e) ................................................................................................ 5

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Defendants, by and through their attorneys, submit *Defendants' Response to Plaintiff's Motion for Attorney's Fees and Expenses*. [Dkt. No. 543]. Plaintiff's *Motion for Attorney's Fees and Expenses* should be denied as it is unreasonable.

## I.      PROCEDURAL SUMMARY

On November 17, 2011, Elia Patricia Lara-Williams ("Ms. Williams") brought suit against Stanley Glanz, in his individual capacity for supervisory liability, and also in his official capacity[1], Correctional Healthcare Management, and Does I through XX.  (Dkt. No. 2).  In her first Complaint, Plaintiff failed to name any individual subordinate defendants, detention officers or medical personal that violated decedent's civil rights. *Id*. On March 16, 2012, Ms. Williams amended her complaint adding several defendants including Earnie Chappell, R.N.; Carmen Luca, L.P.N.; and Julie Hightower (all employees of Correctional Healthcare) and several Owasso Police Officers identifying and alleging that each new identified and named defendant individually violated decedent's civil rights.  (Dkt. No. 4).  On April 16, 2012, Ms. Burke filed the Second Amended Complaint, as the Special Administratrix of Mr. Williams' Estate (Dkt. No. 15).  Plaintiff Burke's Second Amended Complaint did not add any new defendants but reduced the number of Does from 20 to 10.  *Id*.  The named, complained of and identified individual defendants remained Earnie Chappell, R.N.; Carmen Luca, L.P.N.; and Julie Hightower. Plaintiff alleged that medical personnel employed by CHC were both negligent and violated the civil rights of Elliot Williams causing his death.  *Id*.  Other than supervisory, official capacity, *Monell* and negligence claims, Plaintiff did not identify and name any other individuals who

---

[1] Stanley Glanz is no longer the Tulsa County Sheriff. The new Sheriff, Vic Regalado, was substituted in place of Mr. Glanz on the official capacity claim. Mr. Glanz continues to be a party in his individual capacity.

1

violated Mr. Williams' civil rights through direct contact with him.

Concerning Defendant Earnie Chappell, Plaintiff alleged that she was "an employee and/or agent of CHMO/CHC/CHM, who was, in part, responsible for overseeing Mr. Williams' health and well-being, and assuring that Mr. Williams' medical and mental health needs were met, during the time he was in the custody of the Sheriff's Department." *Id*. at ¶ 16.  Further, that despite Mr. Williams' obvious, serious and emergent medical and mental health needs Defendant Chappell did not transport Mr. Williams to a hospital or mental health facility. In addition, Defendant Chappell failed to provide a CT scan, MRI, or any other diagnostic assessment or treatment related to the apparent head trauma." *Id*. at ¶ 44.  Plaintiff alleged Defendant Chappell, who escorted Mr. Williams on his ride down to the medical unit, indicated that she thought Mr. Williams was faking injury. Defendant Chappell became agitated with Mr. Williams and said he was "full of shit." At one point, Defendant Chappell expressed frustration with having to attend to Mr. Williams, stating that she had "too much stuff to do." *Id*. at ¶ 47. Plaintiff alleged Defendant Chappell made no attempt to secure any mental health or medical treatment for Mr. Williams. Defendant Chappell failed to provide a CT scan, MRI, or any other diagnostic assessment or treatment related to the apparent head trauma. Instead, Defendant Chappell disregarded the known, obvious and excessive risks to Mr. Williams' health and safety. *Id*. at ¶ 48.

Concerning Defendants Carmen Luca and Julie Hightower, Plaintiff alleged that both were employees and/or agents of CHMO/CHC/CHM, who was, in part, responsible for overseeing Mr. Williams' health and well-being, and assuring that Mr. Williams' medical and mental health needs were met, during the time he was in the custody of the Sheriff's Department. *Id*. at ¶¶ 17 and 18.  Additionally, on October 27, 2011, Defendants Luca and Hightower were on

2

duty in the medical unit. At the time, Defendant Luca *had been a nurse at the Jail for approximately one week.* Defendant Luca was assigned to the north section of the medical unit, where Mr. Williams' suicide cell was, and Defendant Hightower was assigned to the south section of the medical unit. *Id*. at ¶ 53.  Plaintiff alleged at some point on October 27, Mr. Williams collapsed in his cell, and there was a call of "man down." Plaintiff alleged Defendants Luca and Hightower entered Mr. Williams' cell. However, on information and belief, Defendant Luca refused to get on the floor to administer CPR on Mr. Williams. Defendant Luca indicated that she would only administer CPR while standing up. Defendant Luca attempted to perform CPR on Mr. Williams while standing. Plaintiff alleged Defendant Luca, Defendant Hightower, or both, did not perform the adequate and proper number of chest compressions. *Id*. at ¶ 54.  On information and belief, neither Defendant Luca nor Defendant Hightower ever took Mr. Williams' vital signs at any time while he was in the medical unit. On information and belief, Defendant Luca, Defendant Hightower, or both, failed to adequately monitor and document Mr. Williams' condition while he was in the medical unit. *Id*. at ¶ 55.  Defendant Luca and Defendant Hightower failed to resuscitate Mr. Williams.  *Id*. at ¶ 56.

These are the only specified allegations of conduct which may violate the rights of Elliot Williams.   These are the only specified and identified subordinate actors who are alleged to have violated the civil rights of Elliot Williams.  The pleadings make it apparent that the underlying conduct that was at issue in this case was the conduct of CHC employees and their care and treatment of Elliot Williams.

In early May of 2012, all Defendants submitted answers and on May 9, 2012 a Joint Status Report was submitted (Dkt. No. 37) and the First Scheduling Order was entered by the Court on July 12, 2012. (Dkt. No. 47).  Depositions began in February of 2013.  Out of a total of

36 depositions, Plaintiff took 23 depositions.   A list of depositions is attached as Exhibit A. Over the next year an additional five scheduling orders entered by the Court.  Dkt. No. 8; Dkt. No. 115; Dkt. No. 144; and Dkt. No. 173.  Discovery concluded on December 16, 2013.  (Dkt. No. 180).  On September 10, 2014, the Court ordered that Does I-X be dismissed from the lawsuit.  (Dkt. No. 300).

In January of 2014, Motions for Summary Judgment were filed on behalf of all defendants – Defendant Luca (CHC Nurse), Dkt. No. 213; Defendant Chappell (CHC Nurse), Dkt. No. 214; Defendant Hightower (CHC Nurse), Dkt. No. 215; Defendant CHC/CHM/CHMO, Dkt. No. 216; Defendant Pitt (Owasso Police Officer), Dkt. No. 219; Defendant Townsend (Owasso Police Officer), Dkt. No. 220; Defendant Mutti (Owasso Police Officer) Dkt. No. 221; Defendant Wells (Owasso Police Officer) Dkt. No. 222; and Defendant Glanz (Official and Individual Capacity). Dkt. No. 224.

While the motions were pending, the medical defendants including CHC reached an out of court settlement with the Plaintiff and they were dismissed from the instant suit in September of 2014.  Dkt. No. 299.  30 months after the motions for summary judgment were filed on July 20, 2016, the Court granted the motions for summary judgment filed on behalf of the police officer defendants for the City of Owasso.  On that same day, the Court denied the motion for summary judgment filed on behalf of Stanley Glanz in his individual and official capacities. Dkt. 304.

Thereafter, the matters proceed through pretrial and trial.  This matter was tried before a jury on February 22, 2017, through March 20, 2017. A copy of the Daily Transcripts at trial is attached as Exhibit B. After several hours of deliberation, the jury returned a verdict for the Plaintiff and awarded $10,000,000.00 against Defendants Glanz and Regalado and an additional

$250,000.00 in punitive damages against Defendant Glanz. The verdict is the direct result of Plaintiff's counsel's improper appeal for a retributive, punitive, and deterrent award. In closing argument, Plaintiff's counsel repeatedly, and explicitly, asked for a "verdict of historical significance" against the TCSO, urging the jury to "send a message" and "bring about the long-needed change within the sheriff's office" as "vindication and justice for not only Elliot Williams but for all the victims of the broken system." Post verdict, Defendants Glanz and Regalado submitted a Fed. R. Civ. P. 50(b) motion seeking judgment as a matter of law, and a 59(a) motion seeking a new trial, or, in the alternative, remittitur, Dkt Nos. 507 and 511. Defendants Glanz and Regalado also filed a Fed. R. Civ. P. 59(e) motion to alter/or amend the judgment (Dkt. 499) asking the Court to alter/amend the judgment to apply a set-off from monies previously collected in settlement with the Defendants Correctional Healthcare Defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower in this case. Defendants Glanz and Regalado have also filed a Motion to Disclose the settlement amount previously collected by Plaintiffs from the Correctional Healthcare Defendants. Dkt. No. 505.

## II.    ARGUMENT & AUTHORITIES

The United States Supreme Court has held that the lodestar approach is the preferred method to use when determining an award of attorney's fees under § 1988. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010). Under the lodestar method, the court multiplies a reasonable hourly rate by the number of hours reasonably expended on the case by counsel. *See Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 451 F.3d 1097, 1101 (10th Cir. 2006). In *Perdue*, the court held that the lodestar method "yields a fee that is presumptively sufficient" to encourage attorneys to take on civil rights cases and this presumption is a "strong" one. *Perdue*, 130 S. Ct. at 1673.

The Tenth Circuit has likewise adopted the "lodestar" approach for determining attorneys' fees under § 1988. *See*, *e.g.*, *Bell*, 451 F.3d at 1101 n.3 ("Courts determine what is a reasonable fee by first figuring a 'lodestar' amount and then adjusting that figure based on facts specific to the case."); *Dill v. City of Edmond*, 72 F. App'x 753, 757 (10th Cir. 2003) ("To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." (quoting *Robinson v. City of Edmond*, 160 F.3d at 1281)); *Phelps v. Hamilton*, 120 F.3d 1126 at 1131 ("A court will generally determine what fee is reasonable by first calculating the lodestar . . . .").

The party seeking fees has the burden of establishing entitlement to an award and documenting the reasonable hours expended and a reasonable rate. *See Hensley v. Eckhart*, 461 U.S. at 437, 103 S. Ct. at 1941; *Case v. Unified School District No. 233*, 157 F.3d 1243, 1249(10th Cir. 1998). After calculating the lodestar, the court may adjust the amount up or down based on certain factors. *See Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). The benchmark for fee awards is that the attorneys' fee must be reasonable. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986) (*citing Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 562, 106 S. Ct. 3088, 3094 (1986)). However, before considering any reduction or enhancement, the court must first determine the number of hours reasonably expended and a reasonable hourly rate for each attorney. *See Ramos*, 713 F.2d at 553.

A. **The requested hourly rate is unreasonable.**

In setting the hourly rate, the Court must determine what lawyers of comparable skill, experience and expertise practicing in the area in which the litigation occurs would charge for

their time. *See Ramos* 713 F.2d at 555. The objective of this analysis is to arrive at a prevailing market rate for counsel's services. A reasonable fee in civil rights cases is calculated according to prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In setting an hourly rate a court should establish, from information provided to it and from its own analysis, the level of performance and skills of each lawyer in private firms. *Ramos*, 713 F.2d at 555.  Plaintiff sets forth the requested hourly rates of seven of her attorneys: Daniel Smolen $400, Donald Smolen $400, Bob Blakemore $300, Louis Bullock $350, Patricia Bullock $300, Tom Mortenson $325, and Greg Denney $300. *Plaintiff's Motion for Attorney Fees* at p. 6. However, the total number of attorney fees requested on page 7 of the *Motion* is calculated based on hourly rates for Louis Bullock at $400 and Tom Mortenson at $350.[2] No reasonable rate is identified by Plaintiff for Stephanie Baker or Betty DeJong and Plaintiff has failed to meet the burden, as the lodestar cannot be calculated without a reasonable hourly rate.

Attached as Ex. "C" is the 2016 Local Customary Rate Survey of Tulsa Law Firms.  The survey reflects that for lawyers with 13-15 years of experience, the bulk of the attorneys claim a rate between $225.00 and $315.00.  The maximum reported rate was $325.00.  For attorneys with 16-18 years of experience, the rates ranged from $200.00 to $380.00.  For attorneys with 22-24 years of experience, the majority reported a rate between $260.00 and $355.00.  Clearly, for attorneys with 13 years of experience (Daniel and Donald Smolen)[3] the rate of $400.00 per hour cannot be supported as a reasonable market rate for their services.  With the exception of

---

[2] Plaintiff asks for a fee of $1,521,595.58, however, this number is miscalculated. The totals for the Bullock Law Firm and Thomas Mortensen are calculated based on a greater hourly rate than Plaintiff states in the body of the brief is reasonable. Louis Bullock's total number of hours is multiplied by $400.00 per hour, when Plaintiff requests an hourly rate of $350.00. Tom Mortensen's total number of hours is multiplied by $350, but the hourly rate requested by Plaintiff is $325. Applying the rates for Bullock and Mortenson requested by Plaintiff, the fee amount actually requested by Plaintiff would be $1,473,268.08.

[3] Web research reflects that Daniel and Donald Smolen have been licensed to practice law since 2003.  No affidavit included within the fee application sets forth their skill, experience and/or any expertise practicing in the area of civil rights.

Mr. Blakemore, none of the attorneys have proffered to the court any history concerning skill, experience and/or any expertise practicing in the area of civil rights.

In 2013, the prevailing rate was determined to be from $250.00 to $300.00 per hour. *See D.G. v. Yarbrough*, U.S. District Court for the Northern District of Oklahoma, Case No. 08-CV-074-GFK-FHM. [Dkt. No. 858]. In 2010, Judge Miles-LaGrange found that $290.00 per hour was "towards the higher end for § 1983 litigation," but appropriate in a civil rights-excessive force case in the Western District. *See Bass v. Pottawatomie County Public Safety Center*, U.S. District Court for the Western District of Oklahoma, Case No. CIV-06-397-M. [Dkt. No. 186].

Based upon the foregoing, Defendants Glanz and Regalado request that the Court find that the following rates are reasonable:   Daniel Smolen $300, Donald Smolen $300, Bob Blakemore $300, Louis Bullock $350, Patricia Bullock $300, Tom Mortenson $300, and Greg Denney $300.

## B.   The requested number of hours is unreasonable.

The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees. *See Ramos,* 713 F.2d at 553. Attorneys seeking fees must keep "meticulous, contemporaneous time records to present to the court upon request." *See id; Cunico v. Pueblo School Dist. No. 60, 705 F.* Supp. 1466, 1467 (D. Colo. 1988). Time records for each attorney for whom fees are sought must reveal hours for which compensation is requested and how those hours were allotted to specific tasks. "[F]or example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on." *See Ramos,* 713 F.2d at 553. The court may discount requested attorney hours if the time keeper fails to keep such meticulous and contemporaneous time records. *See Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998). The court in its discretion may deny fee

8

applications or portions there of which are so inadequately documented to prevent determination of their reasonableness. *See In re Cascade Oil Co.,* 126 B.R. 99, D. Kan. 1991).

The *Ramos* court recognized that merely presenting meticulous and contemporaneous time records does not establish that the hours were properly billed. "Compiling raw totals spent, however, does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended." *See Ramos,* 713 F.2d at 553 (quoting *Copeland v. Marshall,* 641 F.2d at 891). "In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *See id.* (internal punctuation omitted). It is the applicant's burden to make a good faith effort to exclude that time which is not reasonably billable to the non-prevailing party. *See Ellis v. University of Kansas Medical Center,* 163 F.3d 1186, 1202 (10th Cir. 1998); *Robinson,* 160 F.3d at 1284; *Sussman,* 108 F.3d 1206, 1212 (10th Cir. 1997).

When scrutinizing the actual hours reported, the district court should distinguish raw time from hard or billable time to determine the number of hours reasonably expended. *See Ramos,* 713 F.2d at 553. *Ramos* identified a number of factors to be considered in making this determination. *See id.* at 554. Even with a good faith effort to exclude non-billable time, the district court must undertake a review of the application to determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation. *See Ramos,* 713 F.2d at 553. *See In re Cascade Oil Co.,* 126 B.R. 99, 105 (D. Kan. 1991).

In reviewing the hours reported for tasks that are properly billable, the district court should evaluate the hours spent on each task to determine their reasonableness. *See id.* In *Ramos* more than 100 hours were spent drafting the complaint. While the court stated that this amount

of time might be reasonable, "it demands explanation." *See id.* In making this reasonableness determination, the district court should consider that what is reasonable in a particular case can "depend upon factors such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." *See id.*

Potential duplication of services is another factor to be examined in determining the reasonableness of hours expended in a particular case. *See id.* "For example, if three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." *See id.* (citing *Copeland,* 641 F.2d at 891). Similarly, if more than one attorney performs the same task, multiple compensation should be denied. "The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *See Ramos,* 713 F.2d at 554.

*In Ramos,* the plaintiffs sought compensation for the time of more than a dozen attorneys. At least five of these attorneys spent more than 200 hours each on the case. Two spent more than 2000 hours each. *See id.* While acknowledging the possibility that this much time was necessary, the court stated that the "vast number of hours reported raises the question of duplication." *See id.* District courts were instructed to review fee application for possible duplication by paying particular attention to "the number of lawyers present at hearings, depositions, and other discovery proceedings, and by evaluating the roles played by the lawyers in the litigation generally." *See id.* Although the court acknowledged that using more than one attorney may be reasonable in certain situations, such as during settlement conferences or during trial, the court directed district courts to give particular attention to the possibility of duplication. *See id.* While the court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required in opposition, this is not determinative of the reasonableness of

10

the fee applicant's own time. *See Robinson,* 160 F.3d at 1284 ("The evidence of the hours expended by defense counsel is not, of course, an immutable yardstick of reasonableness, and it may be disregarded or discounted as a comparative factor if found to be unreasonable in its own right.").

### 1.  Time billed relating to prosecuting Plaintiff's case against other Defendant's

On February 6, 2014, a Stipulation of Dismissal for CHC was filed. (Dkt. No. 231). On September 10, 2014, the Court granted Plaintiff's Motion to Dismiss, with prejudice, the Correctional Healthcare defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower from the lawsuit.  (Dkt. 299).  On September 10, 2014, 30 months after motions for summary judgment were filed, the Court ordered that Does I-X be dismissed from the lawsuit.  (Dkt. No. 300).   On July 20, 2016, the Court granted the Owasso defendants motions for summary judgment dismissing them from the instant lawsuit.  (Dkt. No. 304).  The services billed prior to the dismissal of the other named defendants in this case should not be charged to Defendants Glanz and Regalado, as they were not necessary to the case against Glanz and Regalado.

For example, corporate disclosure statements, attorney appearances, research regarding CHMO, CHM, CHC, drafting the dismissal, Plaintiff's settlement agreement with CHC, the deposition of Houston, communications with counsel for CHC, Motions to Compel, Motions to Quash, and analysis of CHC financials were billed, but not necessary for prosecuting the claim against Glanz and Regalado. Glanz filed one of the eleven (11) answers that were filed by Defendants in this case between April 30, 2012, and May 3, 2012. (Dkt. No. 22-29). The answers were reviewed by DES, DESII, LWB, PWB, and RMB, for a total of 9 hours. *See* Exhibit D, Figure 14.  On April 30, 2012, DES and DESII each billed 1.6 hours, with identical descriptions

"Review of Defendants Filed Answers." On May 3, 2012, LWB and PWD billed 0.6 and 0.4 hours respectively, with identical descriptions "Receive and review two additional e-filings of Defendants' answers." Not all of the 9 hours billed were attributable to Defendant Glanz.

The time billed for the First Amended Complaint should not be imposed upon Glanz, as the amendment adding several defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower (all employees of Correctional Healthcare) and several Owasso Police Officers, did not change with regard to the claims against Glanz.  (Dkt. No. 4).

The time billed for review and responses to eight (8) motions for summary judgment filed by CHC/CHM/CHMO, CHC employees, and Owasso Officers should not be charged against Glanz and Regalado. *See* Dkt. No. 213, 214, 215, 216, 219, 220, 221, 222.

Prior to the dismissal of the other named Defendants in this case, DES billed 561.6 hours (Ex. D,  Figure 18), DESII billed 124.1 hours (Ex. D,  Figure 19), LWB billed 662.7 hours (Ex. D,  Figure 20), PWB billed 75.9 hours (Ex. D,  Figure 21), and RMB billed 910.3 hours (Ex. D, Figure 22), for a total of 2334.6 hours. Counsel proposes a 50% reduction in the total number of hours prior to the time the remaining defendants were dismissed from the action.

### 2.    Don and Dan Smolen duplicative and identical Billing

The billing entries of Don and Dan Smolen do not reflect the "meticulous, contemporaneous time records," required for an award of an attorney fee. *See id; Cunico v. Pueblo School Dist. No. 60, 705 F.* Supp. 1466, 1467 (D. Colo. 1988). Don and Dan Smolen's billing entries are not only duplicative of the services rendered, but the entries are mostly identical. *See* Ex. D, Figure 24. The identical and nearly identical billing entries total 818.8

hours.[4] As further indicia of duplicative, non-contemporaneous billing, on November 10, 2011, DES and DESII submitted identical billing entries, each totaling 4.7 hours, purporting to have made revisions, suggested edits, and discussed the Complaint, though RMB did not draft the Original Complaint until 7 days later. *Id.* These identical entries should be reduced by 50%.

### 3. Tom Mortenson's Application should be denied in its entirety as duplicative, block billing, and vague.

Beginning on December 16, 2016, and ending on February 5, 2017, Mortenson submits 49 billing entries totaling 294.9 hours, each of which are impermissible block billing and do not contain adequate detail to allow the Court to determine the reasonableness of the time spent or the activity performed. *See* Ex. D, Figure 6. In addition to Mortenson's vague activity descriptions, his purported participation in this matter is duplicative of the work already performed by six other lawyers. Mr. Mortenson was not part of the original group of lawyers who filed and litigated the case but entered his appearance in the months preceding the trial in 2017. At trial Mr. Mortenson conducted the direct examination of three witnesses only two of which were deposed in this matter. Mr. Mortenson asked to be excused from trial on the morning of March 10, 2017 due to illness and could not complete the redirect of Witness Hanley although his time records reflect a full day of trial. Mr. Mortenson's vague descriptions do not allow the Court to examine the reasonableness or necessity of his time entries. Mortenson billed for witnesses, re-directs, opening, and closing in a block billing format even though he participated very little in the actual conduct of trial. His status is more of advisor to the trial attorneys rather than an actual participant making his time billing entries duplicative, unreasonable and unnecessary for the trial of this when 5 other attorneys also conducted or

---

[4]Of the 818.8 hours, 610 of the duplicative hours were billed after the dismissal of the other Defendants in this matter. *See* Figure 25.

attended the trial of this matter. The attorney fee application with regard to Mortenson's billing should be denied in its entirety, resulting in a reduction of $103,215.00 (294.9 hours * $350.00/hour).

**4.    Bullock's billing during trial should be excluded as not necessary to the litigation.**

From February 24, 2017, through March 17, 2017, LWB billed 122.3 hours for sitting through jury trial and reviewing electronic court filings. *See* Ex. D, Figure 15. During this period, LWB billed an additional 7.7 hours for reviewing the transcript and drafting an outline of Dr. Harnish's testimony, and 1.3 hours emailing co-counsel with suggestions for closing. The 122.3 hours Bullock sat through trial and reviewed electronic filings was not necessary to the litigation and was duplicative of work being performed by a number of other lawyers. Mr. Bullock, able as he is, did not open, close, or examine a witness, nor did he make any arguments on trial motions or evidentiary matters.

**a.    Denney's billing consists of duplicative block billing.**

From February 22, 2017, through March 23, 2017, Denney blocked billed 8 hours per day. Denney's mere presence at trial did not add any value to the case, and was duplicative of the worked performed by other attorneys in the case. Moreover Denney's description of the service rendered is "Trial." Denney's conduct at trial consists of a direct examination of a single witness on the 11th day of trial. These entries should be denied in their entirety for a reduction of $52,800.00 (22 days * 8 hours * 300/hour).

The balance of the entries from the Denney Law Firm should be denied  for failure to "provide adequate detail to permit a meaningful review of the reasonableness of the activity." *Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246 (2004). Denney's billing should be denied in its entirety for a total reduction of $90,600.00.

14

       **b.**      **Guardianship, Contracting with Plaintiff, and fee agreements between Plaintiff's counsel**

Time billed for Plaintiff's separate guardianship matter, contracting and contract issues with the Plaintiff, and meeting between Plaintiff's counsel concerning their fee agreements should be excluded, as services that were not necessary to the litigation or were of the Plaintiff's own making. These entries make up 37.7 hours and should be excluded.

       **c.**      **The Fee application contains extensive duplication and the total number of hours expended for certain tasks is excessive.**

       1)  Original and First Amended Complaint.

On November 17, 2011, Elia Patricia Lara-Williams brought suit against Stanley Glanz, in his individual capacity for supervisory liability, and in his official capacity, Correctional Healthcare Management and Does I through XX.  (Dkt. No. 2). From November 10, 2011, the date of the first billing entry, until November 17, 2011, the filing of the original Complaint, attorneys DES, DESII, LWB, PWB, and RMB submitted billing totaling 22.9 hours. *See* Ex. D, Figure 1. RMB drafted the Original Complaint, submitting billing for 0.8 hours of legal research, 6 hours of drafting, and 2 hours of revisions; LWB billed 1.3 hours for review, revisions, conferences, and communications with RMB concerning the Original Complaint; and PWB billed 0.5 hours for reviewing the Complaint and conferring with LWB and RMB.

On November 10, 2011, DES and DESII submitted identical billing entries, each totaling 4.7 hours, purporting to have made revisions, suggested edits, and discussed the Complaint, though RMB did not draft the Original Complaint until 7 days later. *Id.*  LWB, DESII, and RMB submitted billing entries for emails and telephone conferences between each other concerning a

Tulsa World News Article, totaling 1.9 hours, filing and service of the Original Complaint, totaling 0.7 hours, and other unspecified communications between co-counsel totaling 0.3 hours. *See* Ex. D, Figure 1.

On March 16, 2012, Elia Patricia Lara-Williams amended her complaint adding several defendants including Earnie Chappel, R.N.; Carmen Luca, L.P.N.; and Julie Hightower (all employees of Correctional Healthcare) and several Owasso Police Officers. (Dkt. No. 4).

RMB drafted the First Amended Complaint and billed 59.6 hours for drafting, research, and revisions. *See* Ex. D, Figure 2. LWB billed 10 hours for conferences and emails with RMB, reviewing emails between RMB and DES, revisions. *See* Ex. D, Figure 3. PWB billed 4.1 hours for performing the same work as LWB. *See* Ex. D, Figure 4.

On March 15, 2012, DES and DESII submitted identical billing entries, each totaling 1.8 hours, purporting to have discussed and reviewed the Amended Complaint. *See* Ex. D,  Figure 5. On February 6, 2012, DES billed for receiving an email from RMB and meeting concerning the Amended Complaint. On March 16, 2012 DES billed 0.7 hours for reviewing an email from RMB concerning the amended complaint. DES's February 6, 2012, and March 16, 2012, entries are duplicative of the work performed by LWB and PWB. *Id*.

<u>2)  Mediation</u>

DES, DESII, LWB, and RMB, each billed for attending mediation, for a total of 27.5 hours. *See* Ex. D, Figure 7. DES billed 2.8 hours for communications with co-counsel and generic "prepar[ation] for mediation." *See* Ex. D, Figure 8. DESII, whose billing descriptions are virtually identical DES's, also billed 2.8 hours for communications with co-counsel and generic "prepar[ation] for mediation." *See* Ex. D, Figure 9. LWB billed 44.3 hours for preparation for mediation, communications with co-counsel, and drafting the mediation statement. *See* Ex. D,

Figure 10. PWB billed 2.1 hours reviewing the mediation statement, conferring with co-counsel, and preparing for mediation. *See* Ex. D, Figure 11. RMB billed 88.4 hours for preparation for mediation, communications with co-counsel, and drafting the mediation statement. *See* Ex. D, Figure 12.

3)  <u>Joint Status Report</u>

Attorneys LWB, RMB, DES, and DESII, billed a total of 7.3 hours drafting and reviewing the Joint Status Report. *See* Ex. D, Figure 13. On May 17, 2012, RMB billed 1 hour for drafting the Joint Status Report. On May 18, 2012, LWB billed 0.2 hours reviewing RMB's draft of the Joint Status Report. On May 24, 2012, RMB billed 0.4 hours for reviewing Glanz's additions to the Joint Status Report and emailing Glanz's counsel, and LWB billed 0.3 hours for reviewing Glanz's additions to the Joint Status Report, and reviewing the email sent by RMB to Glanz's counsel. On May 25, 2012, RMB billed 0.4 hours reviewing counsel Scott Wood's additions to the Joint Status Report, and an additional 1 hours completing the Joint Status Report. Likewise, LWB billed 0.3 hours for final review of the Joint Status Report. DES and DESII submitted identical billing descriptions, describing the activity as "Final Review of Joint Status Report," and each billing 0.3 hours.

On July 12, 2012, RMB billed 0.7 hours reviewing the Joint Status Report he previously drafted, updated the draft, and emailed co-counsel regarding the Joint Status Report, and LWB billed 0.5 hours for reviewing the email from RMB and RMB's draft of the Joint Status Report. On July 13, 2012, LWB billed an additional 0.4 hours reviewing the Joint Status Report and sending emails to unidentified persons. On July 16, 2012, RMB billed 0.4 hours reviewing the final draft of the Joint Status Report and approving it for filing. Also on July 16, 2012, DES and DESII again submitted identical billing descriptions, describing the activity as "Final Review of

Joint Status Report," and each billing 0.3 hours. LWB billed 0.1 hours for receiving and reviewing the e-filed Joint Status Report, and PWB billed 0.4 hours for the same.

> ### d.  The fee application contains inadequate description details, which deprives the Court an opportunity for meaningful review of the reasonableness of the activity.

The fee application contains activity descriptions that do "not provide adequate detail to permit a meaningful review of the reasonableness of the activity," and such entries should be excluded *Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246 (2004). A minimum of 29.3 hours should be excluded for lack adequate descriptions, as shown in Ex. D, Figure 26.

## III.   EXPERT TESTIMONY

Defendants have engaged the services of Terry Thomas, a practicing attorney in Tulsa, Oklahoma, member of the Oklahoma Bar, and admitted in the Northern District of Oklahoma to provide review and expert testimony regarding the prevailing market rate for attorneys; and that the expenditure of hours in this matter by Plaintiff's attorneys and fees and expenses sought are unreasonable with specificity.  He is reviewing materials and will be prepared to testify at a hearing in this matter.

## IV.   CONCLUSION

The total billing of Stephanie Baker and Betty DeJong should be disallowed, as Plaintiff failed to offer or support a reasonable hourly rate for the services of these paralegals. Mortenson and Denney should be excluded as having inadequate descriptions, block billing, and duplicative billing.

Of the 819.10 hours billed by LWB, 331.35 should be disallowed, representative of ½ the number of hours he billed prior to the dismissal of the other defendants in this case. In addition, 122.3 hours should be disallowed, representative of his block billing during trial. The resulting

reasonable number of hours is 365.45, multiplied by the reasonable rate ($350), would equal $127,907.50.

Of the 86.40 hours billed by PWB, 37.95 should be disallowed, representative of ½ the number of hours she billed prior to the dismissal of the other defendants in this case. The resulting reasonable number of hours is 48.45, multiplied by the reasonable rate ($300), would equal $14,535.00.

Of the 1472.4 hours billed by RMB, 445.15 should be disallowed, representative of ½ the number of hours he billed prior to the dismissal of the other defendants in this case. The resulting reasonable number of hours is 1027.25, multiplied by the reasonable rate ($300), would equal $308,100.00.

Of the 729.0 hours billed by DES, 280.80 should be disallowed, representative of ½ the number of hours he billed prior to the dismissal of the other defendants in this case. In addition, 152.5 hours should be disallowed, representative of 1/2 the number of hours he identically billed with DESII.  The resulting reasonable number of hours is 295.7, multiplied by the reasonable rate ($300), would equal $88,710.00.

Of the 405.9 hours billed by DESII, 62.05 should be disallowed, representative of ½ the number of hours he billed prior to the dismissal of the other defendants in this case. In addition, 152.5 hours should be disallowed, representative of 1/2 the number of hours he identically billed with DES. The resulting reasonable number of hours is 191.35, multiplied by the reasonable rate ($300), would equal $57,405.00.

The resulting fee is $596,657.50, subject to further reduction for the number of hours billed for the guardianship, contracting with the Plaintiff, and fee agreements between Plaintiff's

counsel (a minimum of 37.7 hours), and entries containing inadequate descriptions (a minimum of 29.3 hours).

Based upon the foregoing, Defendants object to the Attorney's Fees and Expenses sought by Plaintiff as they are unreasonable. Defendants request that any award be stayed during post-trial challenges and appeals of the judgment.

Respectfully submitted,


*/s/  Katie S. Arnold*
Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
Katie S. Arnold, OBA #32345
BREWSTER & DE ANGELIS, PLLC
2617 E. 21st Street
Tulsa, OK   74114
**Attorneys for Defendants Stanley Glanz
And Vic Regalado**

**CERTIFICATE OF SERVICE**

I hereby certify September 22, 2017 I electronically transmitted the foregoing document using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.


_/s/ Katie S. Arnold_____
Katie S. Arnold